Case number 20-2571 from the District of Minnesota, Sally Ness et al versus City of Bloomington et al. Very well, Mr. Mews, we'll hear from you first. Thank you, may it please the court. I'm Robert Mews and it's my privilege to represent Plaintiff Appellant Sally Ness in this important First Amendment case. I'd like to reserve three minutes of my time for rebuttal. You'll need to watch the clock because if you go past the three minutes, the time will keep running. Understood, Your Honor. You know, there can be no serious or reasonable dispute that the First Amendment protects plaintiffs' right to peacefully and passively videotape and photograph in a public forum information for public dissemination related to a public controversy. In other words, the First Amendment protects plaintiffs' right to monitor the public controversy surrounding the Dar al-Farouk Mosque and Success Academy via technology and photograph minors in a city park in furtherance of her reporting of this controversy. The City of Bloomington and the State of Minnesota cannot make a crime out of what under the Constitution cannot be a crime. The challenged ordinance and the application of the harassment statute against Mrs. Ness's First Amendment activity is directly aimed at activity protected by the Constitution and that's not permitted. Of all places, Hennepin County should understand the importance of protecting a private citizen's right to film matters of public controversy and we certainly saw that in the case of George Floyd. Well, Counsel, doesn't the ordinance at least still allow filming of matters involving a public controversy? It just limits the location where those can be taken. Am I misreading the record on that? Well, Your Honor, the city ordinance prohibits filming of minors in a city park. But you could film, I mean, in other words, the photographer can't be in the park, but the photographer can film what's going on in the park from outside the park. They could, and quite frankly, that undermines any interest that the government might have in protecting minors from being the subject of videotaping or photographing. Well, doesn't that suggest they're at a greater distance and the threat or the risk of harassment or intimidation for minors is lower? Not necessarily, because you could literally be one step back from the public park and be on a public sidewalk. Right? It's, and again, that goes to the question of the fact that this thing is under-inclusive and they really don't have a justification for this. But the ordinance itself, I mean, just on its face, it prohibits videotaping of minors. It is a content-based restriction, just as a matter of law. If a regulator has to look at the content of the speech, or in this case, the content of the film, to determine whether or not somebody is violating that regulation, that law, it is by definition and a matter of law, content-based. So if my client was filming squirrels or trees or anything other than minor children in a city park, that's permissible. But if there's some, for some reason, there's a minor that's in that photograph, then she's now, in fact, violated this. It also operates as a prior restraint, because you can't take that photograph unless, in fact, you have permission beforehand to do so, even if it's done, even if it's done incidentally. You know, the amici wrote a wonderful brief in support of our position on the city ordinance, and they make this point, permitting the city ordinance to stand would have significant repercussions chilling photography and recording in public parks at a time when historic protests are taking place in these spaces. So Your Honor, the point that you're making really goes to undermining the government's interests. Because it's content-based, they must have a compelling interest, and it must be narrowly tailored to serve that interest. As the Supreme Court said in the city of Hialeah case, that when you leave unprotected certain harms that they claim are the basis for the interest, it's no longer a compelling interest. And certainly, even if you would consider it not to be a content-based, but content-neutral, that still undermines the fact that if they're leaving all this harm, supposedly, of chilling where you can take one step out of the public park, it doesn't even meet intermediate scrutiny, and that is not narrowly tailored. But the fact remains, it's content-based. Yes, Your Honor. On the question whether the taking of photographs is speech as opposed to conduct, does it matter whether the person taking the photograph intends to publish them in some way? In other words, would a news gatherer or a person like your client who wants to make public comment on matters of public concern be treated differently than a voyeur or someone who wants to collect photos for the basement and so forth? Well, Your Honor, the ordinance doesn't provide any particular exception. It doesn't make any distinctions between the news gatherer... The ordinance does. I'm talking about does the First Amendment, as applied to this case, distinguish? Your Honor, I'm aware of no case law that would make that distinction. I mean, there are certainly statutes that prohibit somebody secreting a camera in a bathroom, for example, where it might invade the person's private interests. There might be some of those issues, but we're talking about a public park, right? There's no reasonable expectation of privacy in a public park. And so I would say the First Amendment, I'm aware of no distinction where the First Amendment makes what particular use you're going to make of those photographs. Even though that somebody was just babbling and didn't have any particular purpose for their speech in a park, it would still be protected speech. Why is it speech at all, though, is the question. I thought your theory on why it is speech is that it was a predicate, it was conduct that was a necessary part of the process to ultimate public speech. Right. And the Supreme Court... Why is it speech? Your Honor, we cited numerous cases, even this court's case in Telescope Media. The process of photographing and filming is instrumental to actually what the end product is, whether it be a photograph or a film. And the Supreme Court has said time and again that photographs and films themselves are protected just as much as the spoken word. And I think that's a direct quote from one of their cases. And certainly in the case of my client or all the amici, if you're using this for the controversy and disseminating it to the public, I mean, that even provides greater protection. And the ordinance, plainly on its face, prohibits that sort of conduct, so it can't stand. They don't make any exceptions for newsgatherers or some exception that for some reason a photograph might be prohibited. Like in the Casillas case where they had private messages that they were using that it wasn't dealing with anything public. But we're in a traditional public forum to begin with. There's nothing private about this in photographs and videotapes, regardless of their purpose. And I think that I don't know of any case that says otherwise, except for photographs and videotapes that might be used in furtherance of criminal conduct, part of an extortion or something like we saw in some of these other cases. But certainly here we're dealing with content-based restriction in a traditional public forum. And there's no basis under the First Amendment to be able to restrict the way that the city has decided to restrict speech in this forum. Let me address the harassment statute, unless there's other questions about the city ordinance. The harassment statute, and certainly the 2019 version, lacked the intent to harm requirement, and had a negligence mens rea, which is unconstitutional as the Minnesota Supreme Court has held in other particular cases. And what's interesting, the 2019 statute has a three-year statute of limitations. So my client could still, until 2022, still be prosecuted on the 2019 statute. But the problem with the 2020 statute is, granted, they put in the intent to harm requirement, and they took out the negligence mens rea. But the problem here, and it's just like the problem that the Supreme Court resolved in the Coates case, C-O-A-T-E-S, the fact that when the actus reus itself is fully protected by the Constitution, it doesn't matter what the mens rea is here. The fact that her filming of a public controversy in public view, that can't be made criminal because it bases on the mens rea. She could be videotaped, just like somebody's speech could be made for the purpose of intimidating somebody or harassing somebody, unless it falls into one of those exceptions, whether it be fighting words, incitement, or obscenity, something that there is some restrictions on it. But the government has no authority to regulate that. And the Supreme Court made that point clear in the Coates case. And when you look at what the allegations that they made against my client, those allegations about her repeatedly filming, that it was causing the members of the mosque and the school to be afraid, to be fearful, to be intimidated, those allegations still would fall under proscriptions of the 2020 version of the ordinance. And the other thing is, the government, particularly the county prosecutors in their brief, had made it clear that they don't view my client's activity as protected by the First Amendment. So absent some decision from this court, whether it be striking down the 2019 ordinance facially, because it can still be applied, or 2020 prospectively, and whether the court wants to do it facially or as applied to this activity, without this court order, there's nothing that changes the legal relationship of these parties, and she still remains subject to this harassment statute. And we know from the- So isn't it undisputed that the intent requirement under the newer statute is not met here? I mean, I didn't get any sense in the briefs that the city was arguing otherwise, and I may have missed it, but ... Well, Your Honor, I mean, how do you approve intent in a criminal case? The fact that she's repeatedly videotaping, and the subject of her videotape have complained repeatedly that this is intimidating them, that this is causing them great fear. The Attorney General- Didn't the police officer suggest that she had a right, at least in some of these incidents, a right to do what she was doing? I don't remember any suggestion in the record that anyone has claimed she was trying to harass or intimidate. Your Honor, that's ... And if you remember, if you're following what the officer said in the recording, he made it clear that we don't want to go down this road, right? It's such a plain threat that's chilling, and if you look at the police report, in the police report, they made it clear we asked her to stop filming. They feel intimidated. They feel threatened by the fact that she's constantly filming. He said, oh, by the way, maybe you can do it for 30 seconds and move on. Based on what? My client responded back, like, that's not going to work. The fact remains- Well, he was operating under the old statute at that point, though, so here's a question on the 2019 statute on whether the issue is moot. You say that there's a three-year statute of limitations, and therefore, I think you were suggesting she could still be prosecuted under the 2019 statute. Is there any authority that, under Minnesota law, that a person can be prosecuted under a repealed statute? Well, Your Honor, the statute has not been repealed. That's one of the points about ... It has been repealed. They amended it, but it hasn't been repealed, and particularly, the provision that the monitoring by technology provision has certainly ... They've amended it, but the statute itself has not been repealed. What do you mean? That's the difference between ... As I understand it, the 2019 statute is not on the books right now. If somebody could not be charged today with violating the 2019 statute based on what they do today- I agree with that, Your Honor. I'm down to two minutes and 26 seconds of my rebuttal time, but my point being- I'm just wondering whether it's moot. Do you have anything more to say about whether your request for declaratory relief on the 2019 statute is moot? Right, because I don't ... Your Honor, the statute has not been repealed, and mind you, they could still ... If with a three-year statute of limitations, somebody could still be prosecuted under the 2019 statute for activity for conduct that occurred while that statute was still extant. They certainly can't be prosecuted today for it, and that's why I say, Your Honor, I've got about a minute and 54 to reserve for rebuttal. You may. Thank you. Thank you very much. Ms. Swenson, we'll hear from you. Good afternoon, and may it please the court. This is Katherine Swenson from Green Espoir Law Firm on behalf of all defendants at police. I first want to respond to the reference that was made to the murder of Mr. George Floyd. To be clear, had that occurred in the city of Bloomington, neither the statute nor the ordinance would have prohibited the bystander from recording it. That incident did not take place in a city park. The Bloomington ordinance only applies to recorders who are in a city park, and the I understand that, but I think your co-counsel suggested the protest that followed, right? If there were protests in a public park with minors, would the ordinance apply to prohibit, for example, news photographers from capturing images of minors without their consent? I understand. So, the hypothetical is a reporter wants to record juveniles who are protesting in a public park. So, if the first answer is obviously the reporter could step back and record the protest that happened in the park. Is the answer no, though? In other words, it clearly doesn't apply outside the private park, but does it apply on those facts? On those facts, I think that's very different than what we have here. For example, there are situations where it would not be feasible for someone to take a step back or for someone to get consent. In a situation like the one you proposed, the person recording has at least two arguments that are not available to NESS. One is that ample alternative channels are not available for the recorder, because maybe it's an emergency situation, like with George Floyd. You see a crime that has happened in front of you. I thought you said they could just step back. So, that seems like there's alternatives. No, I mean, for example, if there was a protest that just sprang up and the reporter was inside the crowd at the time the protest was happening. I'm trying to address a situation like that, where there is not an opportunity for the reporter to just take a step back and record the protest that's going on. I think it is okay under either situation. What if police officers responded to allegations of child abuse and their body cams went on? As a result, they filmed children that were not involved in the accusations of abuse. Would they be subject in a public park to violating the city ordinance? No, that would not apply in that situation for two reasons. One is that it's kind of an exigent situation where the officer, you know, if there was a situation that's going on, the officer would not have the time to seek consent. Perhaps the parents aren't even there. And the other point is it deals with intent. Arguably, in a situation like that, the intent is to respond to the, there's this fleeting evidence that is happening. There's an emergency situation. There's no time to get consent and it's unreasonable for the officer to step outside of the situation or perhaps illegal to turn off the camera. To Judge Collison's question, to co-counsel, is it the act of taking the photograph or the recording or is it the intent that you want to use it for publication as opposed to using it for legitimate law enforcement purposes? I mean, what's important and how do you address Judge Collison's question to your co-counsel? Sure. The answer to the question is that the statute governs conduct, which is the taking of a photograph, the pressing of the record button. Any expression or message that the photographs or film is later used to impart, there's a difference between those two things. And when we look at the cases that talk about what content-based and what content neutrality means, content-based focuses on a restriction based on the message. Here, the ordinance focuses on conduct, the taking of the picture. It does not focus on whatever message Ms. Ness might wish to convey later on. Well, the concern with that is you seem to be setting up a scenario under which a city can ban news photographers from taking pictures on the view that they're only engaged in conduct, not speech. I mean, even in a traditional public forum, Your Honor, there can be restrictions as to the time, place, and manner in the traditional public forum, and that's intermediate scrutiny. As I've talked about, the ordinance first, it's content neutral, and I think the court should reject Ness's argument that it's content-based. She is wrong that a city official would have to, for example, look at the content of her recordings to determine whether the activity was unlawful. First, she cites no precedent to support this definition of content-based. In 2017, this court said in the Havlak photographer case that an ordinance is content neutral if it doesn't draw a distinction based on the message that a speaker conveys. Here, the ordinance merely restricts where a recorder can be while doing the act of recording. It targets the way in which the images or videos are captured, not the resulting images or the later expression that could involve those images. It prohibits conduct that does not convey any message. To the extent that the ordinance impacts the message that she ultimately wants to convey,  Next, I would refer the panel to the Rumsfeld case from the U.S. Supreme Court in 2006. There, that was a law about military recruitings in schools, and the court held that that was a regulation of the conduct of the schools, not speech. The expressive component of the school's actions, for example, sending emails to students, that was not created by the conduct itself, but by the speech that accompanies it. So here, to the extent that Nessa's message or anyone's speech, or even a New York Times reporter's speech, that would be incidental to the act of taking the photograph. Going back to why you don't have to examine the content of the photograph for the ordinance to be violated, a jury would not need to see the photograph or the video to convict someone under the ordinance. For example, someone could violate the ordinance by taking a photograph of a child in front of many witnesses and then delete the photograph before police arrive. That's still taking a photograph. The focus of the ordinance is on the action, not the end product of the recording. Well, how do you know whether it was a photograph of a child versus an adult without considering the content? As I said, say somebody deleted the photograph, you could have the child say, this person came up to me, put a camera right next to me, and was pressing the button. You could have adults standing nearby who said this person approached the child, took out a camera, and was in the child's face. You would not need to see the image. I understand witnesses could tell you what would have been in the photograph, but why don't you have to consider what's the content of the photograph to decide whether it was a photograph of a child versus a photograph of an adult? I mean, that would be up for the jury to determine, Your Honor. Now, we're talking about whether it's content-based, and you keep arguing that there's no viewpoint discrimination, but the question of content is different, arguably. I think the distinction has to be in the difference between the act of simple recording. For example, in the telescope media case, which Ness's counsel mentioned, this court distinguished between the act of simply pressing record and creating a video, as opposed to the wedding videos in that case, which involved actually creating something that was artistic, and that's the end product. There's a difference between Ness's act of simple recording and whatever message she might convey later using the recordings. Recordings can facilitate speech, but recording is not speech itself. And so that would be my answer to that question. Does this ordinance prohibit two teenagers from going to the park and taking pictures of each other? Yes. Just as child pornography statutes would prevent teenagers from taking pictures of each other in states of undress, yes. Well, no, I don't think it's like child pornography. If two teenagers go to the park and they're dressed up for the prom and say, let's take pictures of each other before we go to the prom. I mean, arguably, it would be very easy to get consent in that situation. Obviously, the prom is an event that is scheduled to take place. There are no exigent circumstances. It can be arranged in advance. It's a reasonable time, manner, and place restriction. What do you think of the harassment statute and whether the 2019 statute is still... Certainly, I guess I'm happy to address that. And it's fairly simple, I think. So Ms. Ness alleges that she ceased her recording activity in August 2019 after an incident with police officers, which, by the way, they did tell her that it was okay for her to record. And they left her to continue recording. So that would be the answer to Judge Colleton's earlier question on that matter. But Ms. Ness stopped in 2019, and there are no allegations that she ever started again. And so prosecution has been declined by both the city and the county after that happened for her past conduct. So in other words, her past conduct is off the table, and any future conduct would be subject to the 2020 statute. There is just simply no way she can be prosecuted under the 2019 statute. Well, are you saying that if the county attorney changed her mind right now, that she could not be charged under the 2019 statute? There's not a credible threat of prosecution in this case. There's absolutely no evidence that that would happen. The evidence is that prosecution has been declined. Well, that's sort of a different question. I understand there's no credible threat that she'll be prosecuted under the 2019 statute if she goes out today and takes photographs. I think counsel is raising a different question, which is whether she could be prosecuted for what she already did. I must admit I'm a little confused, because I think I heard opposing counsel say that the statute was not repealed. It was amended. It no longer exists. And I can't think of any authority that would seem to imply that the statute still exists just because it didn't use the language of repeal. I mean, she cannot be prosecuted under the statute, that 2019 statute, because it no longer exists, and joining enforcement or declaring it unconstitutional would have no effect. And certainly, as this court has explained, statutory changes that discontinue the challenge practice, that is enough to render a case moot, even if the legislature could, in theory, go back and undo that. There's absolutely no evidence that that is a practicality in this case. Your Honors, I see that, if I may, I would like to transition to the issue of standing, which I believe is dispositive to this case. To all of the claims, unless there are further questions about the mootness part of standing. Well, mootness is part of standing, but... Yes, it's the second element. I would like to talk about the first one, though, injury in fact, which, with regard to the statute, I think is dispositive of all of the claims as well. Ness does not have Article III standing to challenge either the old version or the new version of the statute, because there's no injury in fact. And the question here is whether Ness's decision to chill her speech is objectively reasonable. That means she has to show, number one, an intent to engage in conduct that is prohibited by statute, and two, that there's a credible threat of prosecution. And she can't show either of these things. First, neither version of the statute prohibits what Ness says she wants to do.  A defendant must follow, monitor, or pursue an individual victim, rather than monitor a physical space, an issue, or a crowd of people. By contrast, Ness is alleging that her recording focuses on a land-use controversy, not a specific individual. Second, there's no credible threat of prosecution here, where the police merely responded to and investigated complaints about Ness's behavior toward children, where she was never arrested, cited, ticketed, or charged criminally for her recording behavior, and where both the county and the city have declined to prosecute Ness for her recording behavior. And she does not claim that what she wants to do in the future is any different than what she has already done. I also wanted to address the idea of under-inclusivity that was raised earlier by counsel. The ordinance here is narrowly tailored to serve many significant government interests, and I would point the court to what the district court said here. Taking just a step back from the park, it might not mean a lot to Ms. Ness, but it means a lot to the interests of the children. As the district court said, requiring recorders to collect images from a distance, rather than from inside a city park, makes it less likely that a child in the park will feel frightened, or that their identity will be ascertainable. Thus, the important government interest in protecting children is not undermined by allowing a person to record children from just outside a city park's boundaries. And to be clear, Ness is arguing that the ordinance is under-inclusive. With regard to over-breath, the Supreme Court has made it clear that if the parties have not preserved an issue, an appellate court cannot reverse on that basis, even if an amicus addresses the issue. That's the Sinanang Smith case from last year by the United States Supreme Court. So in conclusion, Ness lacks standing to challenge the statute because there's no injury in fact, and additionally the amendment of the harassment statute has made her claims moot. She also lacks standing to challenge the ordinance because according to her own allegations, it was not the ordinance that caused her to stop her reporting activity. The court need not reach the merits of the claims, but if it does, it should reject Ness' assertions that she has an absolute right to record. Both the ordinance and the statute should be upheld because they satisfy the appropriate levels of constitutional scrutiny, and the Rule 12 dismissal of Ness' case should be affirmed. Thank you. Very well, thank you for your argument. Mr. Mead, you're on rebuttal. Thank you. Addressing the standing issue first, and I think it was pretty clearly resolved in the 281 CARE case decided by this court in 2011. Plaintiff has established that she, and this is a quote from out of that case, would like to engage in arguably protected speech, but she's chilled from doing so by the existence of the statute. Self-censorship can itself constitute an injury in fact. And certainly that applies in this case to both the city ordinance and to the harassment statute, and the district court judge found that she had standing to challenge the city ordinance. It was objectively reasonable for her to halt that activity, and certainly I don't think standing is an issue here at all with regard to either of them. With regard to whether or not it's content-based, this is what the Supreme Court said, McCollum v. Coakley as the test. If it requires enforcement authorities to examine the content of the message that is conveyed, or in this case filming, because the filming is in fact the constitutional activity to determine whether a violation occurred makes it content-based. And this distinction between whether it's a content-based restriction or just a restriction on conduct, this court addressed that issue very clearly in Telescope Media, because the government was making the same argument, we're just regulating conduct, making the same argument, this isn't content-based. But at the end of the day, she's going to be punished because of what is on the content of her film or on her video. And this argument that somehow you can take one foot out, it makes a difference, because then the children won't have the camera in their face or whatever, the ordinance itself would prohibit clandestine recording as well. So the child might not even know that they're in fact being recorded. And the uninclusiveness question goes to whether or not the government has a legitimate interest in passing this ordinance, and they don't. Both the ordinance and the harassment statute are grave attacks on the First Amendment and must be struck down. Very well, thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file an opinion in due course.